

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **SHAWN ARCEMENT** | **CIVIL ACTION** |
| **VERSUS** | **NO. 04-1736** |
| **BURL CAIN, WARDEN** | **SECTION "K"(4)** |

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an Evidentiary Hearing if necessary, and to submit Proposed Findings and Recommendations pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an Evidentiary Hearing. *See* Title 28 U.S.C. § 2254(e)(2).[1]

### I. Factual Background

The petitioner, Shawn Arcement ("Arcement"), is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] On March 30, 1994, Arcement and a co-defendant, Troy Young, were indicted by a LaFourche Parish Grand Jury for the first-degree murder of Bernard Bradley

---

[1] Under Title 28 U.S.C. § 2254(e)(2), the District Court may hold an Evidentiary Hearing only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by an exercise of due diligence, and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 2, Petition.

during a drive-by shooting on February 28, 1994.[3] Because there was no trial or appeal, the record contains no other detailed facts about the crime.

Arcement initially entered a plea of not guilty by reason of insanity.[4] On September 13, 1994, after due proceedings on the issue,[5] the Trial Court declared Arcement competent to proceed to trial and to assist counsel with his defense.[6]

Thereafter, the indictment was amended as to Young on October 3, 1994, to charge him with second-degree murder pursuant to a plea agreement.[7] He entered a plea of guilty to the amended charge that day.[8] After waiving legal delays, Young was sentenced that day to life imprisonment without benefit of parole, probation or suspension of sentence.[9]

The indictment was also amended as to Arcement on October 5, 1994, in connection with his agreement to enter a plea of guilty to second degree murder.[10] As part of the plea agreement, the State agreed not to challenge Arcement's pursuit of a commutation of his life sentence. After

---

[3] St. Rec. Vol. 1 of 4, Indictment, 3/30/94. The facts of the case are taken from the transcript of the plea and sentencing hearing. St. Rec. Vol. 3 of 4, Transcript of Plea and Sentencing, p. 2, 10/5/94.

[4] St. Rec. Vol. 1 of 4, Transcript of the Arraignment, p.1, 4/7/94.

[5] St. Rec. Vol. 2 of 4, Motion Hearing Transcript, 7/27/94.

[6] St. Rec. Vol. 2 of 4, Trial Court Judgment, 9/13/94.

[7] St. Rec. Vol. 1 of 4, Indictment, 3/30/94.

[8] St. Rec. Vol. 2 of 4, Transcript of Re-Arraignment (Young), p.3, 10/3/94.

[9] St. Rec. Vol. 2 of 4, Transcript of Re-Arraignment (Young), p.25-26, 10/3/94; Sentence (Young), 10/6/94.

[10] St. Rec. Vol. 1 of 4, Indictment, 3/30/94; St. Rec. Vol. 3 of 4, Transcript of Plea and Sentence, p.2, 10/5/94.

waiving legal delays, Arcement was sentenced that day to life imprisonment without benefit of parole, probation or suspension of sentence.[11]

Arcement's conviction became final five days later on October 10, 1994, because he did not seek reconsideration of his sentence or appeal the conviction. *Cousin v. Lensing*, 310 F.3d 843, 845 (5th Cir. 2002) (petitioner's guilty pleas became final at the end of the five-day deadline for filing a notice of appeal under La. Code Crim. P. art. 914[12]).

## II. Procedural Background

On February 22, 1996, Arcement filed an Application for Post Conviction Relief in the Trial Court alleging that his counsel was ineffective for failure to properly advise him of the rules for seeking a commutation of sentence prior to his acceptance of the plea agreement which has rendered his plea invalid.[13] After receipt of the State's response, the court set the matter for an evidentiary hearing, which was held on February 13, 1997.[14] On April 16, 1997, the Trial Court issued its Judgment denying Arcement's Application as meritless.[15]

---

[11]St. Rec. Vol. 3 of 4, Transcript of Plea and Sentence, p.14, 10/5/94; St. Rec. Vol. 2 of 4, Sentence (Arcement), 10/6/94.

[12]At the time of petitioner's conviction, La. Code Crim. P. art. 914 required a criminal defendant move for leave to appeal within five days of the order or judgment that is being appealed or of a ruling on a timely motion to reconsider a sentence. Failure to move timely for appeal under Article 914 renders the conviction and sentence final at the expiration of the period for filing the motion for appeal. *State v. Counterman*, 475 So.2d 336, 338 (La. 1985). Article 914 was amended by Acts 2003, No. 949, § 1 to provide 30 days for filing of the notice of appeal.

[13]St. Rec. Vol. 3 of 4, Application for Post Conviction Relief, 2/22/96.

[14]St. Rec. Vol. 3 of 4, Answer to Application for Post Conviction Relief, 3/27/96; Memorandum, 2/5/97; Trial Court Order, 10/25/96; Transcript of Post Conviction Relief Evidentiary Hearing, 2/13/97.

[15]St. Rec. Vol. 4 of 4, Judgment on Application for Post Conviction Relief, 4/16/97.

3

More than five-and-one-half years later, on November 27, 2002, Arcement filed another Application for Post Conviction Relief in the Trial Court.[16] In this Application, Arcement alleged that his plea was invalid because the State failed to advise him of the procedure for obtaining a commutation before he accepted the plea agreement and that his counsel was ineffective for failure to file a motion to withdraw the invalid guilty plea when neither counsel nor the State advised the petitioner about the procedure for obtaining a commutation. The Trial Court denied Arcement's application on January 27, 2003, as repetitive pursuant to La. Code Crim. P. art. 930.4(D).[17]

On March 5, 2003, Arcement filed an untimely[18] Writ Application in the Louisiana First Circuit Court of Appeal challenging that ruling.[19] The Application was denied without reasons on April 22, 2003.[20]

Arcement also filed an untimely[21] Writ Application in the Louisiana Supreme Court on June 11, 2003.[22] The Louisiana Supreme Court denied the Application on May 21, 2004, as time-barred

---

[16]St. Rec. Vol. 4 of 4, Application for Post Conviction Relief, 11/27/02.

[17]La. Code Crim. P. Art. 930.4 provides several grounds for the dismissal of a post conviction application, including Part (D) which provides for dismissal when the application is a successive application which raises claims which are not new or different.

[18]The application was filed more than 30 days after the trial court's ruling, the period set forth in La. App. Rule 4-3; *see also*, La. Code Crim. P. art. 922.

[19]The State failed to produce a copy of the appellate court records as ordered. However, the filing date of this Writ Application was obtained from the Clerk of the Louisiana First Circuit. The record also contains what appears to be a courtesy copy of the Writ Application that was sent to the Trial Court on March 10, 2003. St. Rec. Vol. 4 of 4, 1st Cir. Writ Application, 3/10/03.

[20]St. Rec. Vol. 1 of 4, 1st Cir. Order, 2003-KW-0440, 4/22/03.

[21]The application was filed more that 30 days after the appellate court's ruling, the period set forth in La. Code Crim. P. art. 922(C) and La. S. Ct. R. X§5(a).

[22]The State also failed to produce a copy of the Louisiana Supreme Court records as ordered. However, the filing date of this Writ Application was obtained from the Clerk of the Louisiana Supreme Court. The record also contains what appears to be a courtesy copy of the Writ Application that was sent to the Trial Court on May 27, 2003. St. Rec. Vol. 4 of 4, La. S. Ct. Writ Application, 5/27/03.

pursuant to La. Code Crim. P. art. 930.8 and *State ex rel. Glover v. State*, 660 So.2d 1189 (La. 1995), as well as La. Code Crim. P. art. 930.4(D).[23]

### III. Current Federal Petition

On July 21, 2004, Arcement filed the instant Petition for Federal Habeas Corpus Relief in which he alleges that his guilty plea was unconstitutional on two grounds. First, Arcement claims that he was not advised of the procedure for obtaining a commutation before he accepted the plea agreement. Second, Arcement claims that his counsel was ineffective for failure to withdraw the invalid guilty plea when neither counsel nor the State advised him about the procedure for obtaining a commutation.[24]

The State opposes the Petition on the basis that it is not timely filed and the claims are otherwise without merit.[25]

### IV. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, which comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, went into effect on April 24, 1996[26] and applies to habeas petitions filed after that date. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320

---

[23]*State ex rel. Arcement v. State*, 874 So.2d 164 (La. 2004); St. Rec. Vol. 4 of 4, La. S. Ct. Order, 2003-KH-1650, 5/21/04. At the time of Arcement's conviction, La. Code Crim. P. art. 930.8 provided a three-year period for a defendant to file for post-conviction relief in the state courts. In *Glover*, the Louisiana Supreme Court held that an appellate courts can deny post-conviction relief as untimely under Article 930.8, even if the lower court addressed the merits or did not consider timeliness.

[24]Rec. Doc. No. 2, Petition, Memorandum in Support.

[25]Rec. Doc. No. 4.

[26]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 (5th Cir. 1992).

5

(1997)). The AEDPA therefore applies to Arcement's petition, which is deemed filed in this Court under the "mailbox rule" on June 7, 2004.[27]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State argues that Arcement's federal petition is untimely filed and his claims are without merit. The State has not addressed exhaustion of state court remedies. Nevertheless, the Court finds that Arcement has exhausted available state court remedies and for the following reasons, his petition is not timely filed and must be dismissed for that reason.

## V.  **Statute of Limitations**

The AEDPA requires a petitioner to bring his § 2254 claim within one year of the date his conviction became final.[28] *Duncan v. Walker*, 533 U.S. 167, 179-80 (2001). Arcement's conviction

---

[27]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Arcement's petition on July 21, 2004, the date on which the filing fee was paid. Arcement, however, signed the petition on June 7, 2004, which is the earliest date he could have submitted it to prison officials for mailing. The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition. *See Cousin v. Lensing*, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

[28]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
    A.    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
    B.    the date on which the impediment to filing an application created by State

became final on October 10, 1994, when he did not appeal or seek reconsideration of his sentence after his plea of guilty. Under the plain language of § 2244, Arcement had until October 10, 1995, to file a timely federal application for habeas corpus relief. Thus, literal application of the statute would bar Arcement's § 2254 petition as of that date, which was six months prior to the effective date of the AEDPA.

However, the United States Fifth Circuit Court of Appeals granted a one-year grace period within which petitioners could file timely federal habeas corpus petitions if their convictions became final prior to April 24, 1996, the effective date of the AEDPA. *Flanagan*, 154 F.3d at 200; *United States v. Flores*, 135 F.3d 1000, 1004 (5th Cir. 1998), *cert. denied*, 525 U.S. 1091 (1999). Considering this one-year grace period, Arcement was required to file his federal habeas petition no later than April 24, 1997. His petition, however, is considered filed under the federal mailbox rule on June 7, 2004, more than seven years after the grace period expired. Thus, Arcement's petition must be dismissed as untimely, unless the one-year grace period was tolled as provided for by the AEDPA.

A. **Equitable Tolling**

The doctrine of equitable tolling allows for tolling of the AEDPA's limitation period when the petitioner has been pursuing his rights diligently, and there are rare or extraordinary

---

        action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
C.     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
D.     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. Title 28 U.S.C. § 2244(d).

circumstances preventing timely filing. *Pace v. DiGuglielmo*, 125 S.Ct. 1807, 1814 (2005); *see also Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998), *cert. denied*, 525 U.S. 1091 (1999); *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999). Equitable tolling is warranted <u>only</u> in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. *Pace*, 125 S. Ct. at 1814-15; *Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002). Arcement has not alleged, and the record does not reflect any basis for equitable tolling in this case. Therefore, the Court need only determine whether Arcement is entitled to statutory tolling.

### B. <u>Statutory Tolling</u>

Section 2244(d)(2) provides that the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. *See* Title 28 U.S.C. § 2244(d)(2). In order for a State post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing. *Pace*, 125 S. Ct. at 1812 ("When a postconviction application is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)."); *Williams v. Cain*, 217 F.3d 303, 306-07 n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir. 1999), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999).

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams*, 217

F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures.'") (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999), *aff'd*, 531 U.S. 4 (2000)); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dilworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 264 F.3d 310, 316 (3d Cir. 2001) (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. *Godfrey v. Dretke*, 396 F.3d 681, 686-88 (5th Cir. 2005).

The federal courts have also determined that requests for transcripts and copies from the record are not applications for post-conviction or other collateral review and do not affect the timeliness calculations. *Osborne v. Boone*, 176 F.3d 489, 1999 WL 203523 (10th Cir. Apr. 12, 1999) (Table, Text in Westlaw) (motion for transcripts is not "other collateral review" for tolling purposes); *see also Brown v. Cain*, 112 F. Supp.2d 585, 587 (E.D. La. 2000), *aff'd*, 239 F.3d 365 (5th Cir. 2000); *Gerrets v. Futrell*, 2002 WL 63541 (E.D. La. Jan. 16, 2002); *Jones v. Johnson*, 2001 WL 1006062 at *3 (N.D. Tex. Aug. 13, 2001) (petitioner should file application and then continue to gather transcripts); *Grayson v. Grayson*, 185 F. Supp.2d 747, 751-52 (E.D. Mich. 2002) (delay in receipt of transcript, not required to file an application, does not warrant equitable tolling).

Arcement is not entitled to tolling for his requests for documents which were filed during the periods discussed herein.[29]

In this case, Arcement's one-year grace filing period was to begin running on April 25, 1996, the day after the effective date of the AEDPA. However, at that time, Arcement had his first application for state post conviction relief pending in the Trial Court and is entitled to tolling therefor. The Application was denied by the Trial Court on April 16, 1997. It remained pending for tolling purposes for an additional 30 days, until May 16, 1997, when no further appellate review was available. *Williams*, 217 F.3d at 310; La. App. Rule 4-3.

The one-year grace filing period began to run the next day, on May 17, 1997, and ran uninterrupted for 365 days when it expired on May 16, 1998. Arcement had no properly filed state application for post-conviction relief or other collateral review pending during that time. His next such filing was made four and one-half years later, on November 27, 2002. He is not entitled to any tolling consideration for the subsequent post-conviction filings made after expiration of the AEDPA filing period. *Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000). The limitations period also is not tolled merely because the petitioner believes he is entitled to relief on the claims raised. *United States v. Alexander*, 2000 WL 1092618 at *3 (E.D. La. Aug. 2, 2000) (Barbier, J.); *Gaines v. Cockrell*, 2003 WL 222444 (N.D. Tx. Jan. 28, 2003) (citing *Melancon v. Kaylo*, 259 F.3d 401, 408 (5th Cir. 2001)).

Arcement's federal habeas corpus petition is deemed filed June 7, 2004, more than six years after expiration of the one-year grace filing period. For these reasons, Arcement's federal habeas petition is untimely and should be dismissed with prejudice as time-barred.

---

[29]*See e.g.*, St. Rec. Vol. 4 of 4, Request for Copies, 2/6/98.

## VI. Recommendation

It is therefore **RECOMMENDED** that Shawn Arcement's Petition for Issuance of a Writ of Habeas Corpus filed pursuant to Title 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 28th day of July, 2005.

KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE